**SIGNED THIS: May 9, 2019**

_____

**Thomas L. Perkins**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JENNIFER BROWN, | ) | Case No.   18-81242 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OF DECISION

This matter is before the Court for decision on the issue of whether all or any part of an annual

bonus expected to be received by the Debtor, Jennifer Brown, in the year following that in which she filed

her bankruptcy case is property of the estate. The issue is raised by the Trustee's motion for turnover of a

*pro rata* portion of the bonus, based on the *pro rata* by days method, and is submitted to the Court

without trial, on a stipulated statement of facts and memoranda of law filed by the Debtor and the Chapter

7 Trustee, Charles E. Covey (Trustee).

## FACTS

According to the stipulated statement of facts, the Debtor is employed by Caterpillar as an at-will,

non-union employee, whose employment is not subject to a collective bargaining agreement or any

employment contract. The Debtor is eligible to participate in the Caterpillar Short-Term Incentive Plan

(STIP), under which she has been paid an annual bonus (STIP bonus) following each year of her employment with Caterpillar. The parties have stipulated that the STIP bonus is discretionary and fully revocable by operation of the terms of the STIP documents. The relevant STIP provisions are summarized as follows:

- A participant shall not be vested in any awards and shall not be entitled to payment in advance of actual receipt of the payment;
- The Vice President shall have the right to make reductions to the base award otherwise payable to a participant for any reason;
- The plan administrator reserves the right to make any adjustments or rescissions to the awards payable to a participant hereunder for any reason and at any time;
- The compensation committee retains the absolute and unconditional right at any time prior to the date payment is actually made to decrease or terminate any and all awards to be paid pursuant to the plan;
- The Company shall have the right at any time prior to the date payment is actually made to amend, in whole or in part, any or all of the provisions of this plan by action of the compensation committee;
- The Company expressly reserves the right to terminate the plan at any time prior to the date payment for that plan year is actually made;
- No participant shall have any right to receive a benefit hereunder except in accordance with the terms of the plan.

On the basis of these provisions, the parties have stipulated that "payment of the entire bonus is discretionary and that no employee has a right to receive the bonus until the money is deposited into their bank account." The parties also stipulate that the Debtor has received a STIP bonus for every year of her employment with Caterpillar. They agree that because the petition filing date of August 17, 2018 is 62.7% of the way through the calendar year, if the Debtor receives in 2019, a STIP bonus for 2018, "62.7% of the bonus is rooted in the pre-bankruptcy past."

The Trustee argues that the STIP bonus has enough roots in the prebankruptcy past sufficient to bring it into the bankruptcy estate, whereas the Debtor, while admitting that the bonus is rooted to some extent in the prebankruptcy past, argues that those roots are not sufficient to warrant inclusion in the estate. As explained below, the question will not be decided through application of the "sufficiently rooted" test. Rather, the STIP bonus is determined not to have entered the bankruptcy estate because the Debtor did not have a prepetition property interest in the bonus as a matter of Illinois law.

2

## ANALYSIS

Section 541(a)(1) of the Bankruptcy Code provides that commencement of a bankruptcy case creates an estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). The term "property" is not defined in that section or in section 101. Section 541(a) defines what interests of the debtor are transferred to the estate but does not address the existence and scope of the debtor's interest in a given asset. *Dumas v. Mantle,* 153 F.3d 1082, 1084 (9th Cir. 1998). While the question of whether an interest should be classified as property of the estate is one of federal law, state law determines the nature and extent of the debtor's interest. *Butner v. U.S.,* 440 U.S. 48, 54-55 (1979); *In re Krueger,* 192 F.3d 733 (7th Cir. 1999). "Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner,* 440 U.S. at 55. Thus, unless a property interest arising under federal law is at issue, courts should look to state law to determine whether a debtor has a property interest and, if so, its nature and extent.

While the scope of section 541(a)(1) is expansive, the legislative history makes clear that the provision does not expand the rights of the debtor in the hands of the estate, and instead applies the principle that the trustee stands in the shoes of the debtor and succeeds to no greater rights than those held by the debtor on the petition date. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, n. 8 (1983); *Sender v. Buchanan,* 84 F.3d 1281, 1285 (10th Cir. 1996) (the estate's rights can be no stronger than they were when actually held by the debtor). Section 541(a)(1)'s phrase "as of the commencement of the case" operates as a temporal cutoff point, meaning that property interests that exist and belong to a debtor when the petition is filed are included within the bankruptcy estate, whereas property interests that the debtor acquires after the bankruptcy filing are not part of the estate, subject to certain exceptions stated in section 541. See *In re Chernushin,* 911 F.3d 1265, 1270 (10th Cir. 2018).

Uncertainty may arise when a property interest has its origins in the prepetition time frame but isn't obtainable by the debtor until after bankruptcy, subject to the postpetition occurrence of one or more contingencies. Where a debtor's rights in property are created prepetition, it is well established that the

presence of contingencies does not necessarily defeat the estate's claim to the property. *In re Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993). At the other end of the spectrum are property interests originating from a contractual relationship, including an employment relationship, an occurrence or some activity that existed or took place prepetition, but where the debtor, on the petition date, has only potential rights that are not certain to arise and that do not become enforceable, if at all, until after bankruptcy. Courts refer to this kind of possibility of a property interest as an "expectancy." See *In re Marriage of Centioli,* 335 Ill.App.3d 650 (1 Dist. 2002) (distinguishing a present property interest from a mere expectancy interest, which is an interest of a person who merely foresees that he might receive a future benefit).

### The Sufficiently Rooted Test

The Debtor and the Trustee have stipulated that the STIP bonus, arising out of the employment relationship between the Debtor and Caterpillar, is "rooted in the pre-bankruptcy past." That term was first used by the Supreme Court in *Segal v. Rochelle,* 382 U.S. 375 (1966), a case decided under the Bankruptcy Act involving the separate bankruptcies of a business partnership and the two individual partners. At the time of the bankruptcy filings on September 27, 1961, the Internal Revenue Code provided for loss-carryback adjustments so that a taxpayer who incurred losses during a given year could use those losses to offset and obtain a refund of income taxes paid during recent preceding years. The individual partners were eligible to use the partnership losses suffered during 1961 to obtain a refund of income taxes they had previously paid. The court determined that their loss-carryback refund claims were within the meaning of the term "property" as used in the Bankruptcy Act, emphasizing that the two factual predicates necessary to claim the refund were in existence on the petition date. Income taxes had been paid during the several years prior to the filing, and during the year of bankruptcy at the time of filing the partnership had suffered a net operating loss. The court summarized its reasoning using a two-part analysis: the loss-carryback refund claim "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under §70a(5)." *Id.* at 380.

The tax refund claim at issue in *Segal* was treated by the Court as a property interest in existence on the petition date. Under the Internal Revenue Code, the individual debtors had a right to a refund subject only to the contingency of the end-of-year determination of the partnership's loss. The amount of the refund was uncertain, but the statutory right to a refund was unconditionally established as of the petition date.[1] Therefore, *Segal* dealt not with an expectancy but, rather, with a property interest subject to a contingency. In addition, the debtors' right to the tax refund was a federally created property interest arising under the Internal Revenue Code.

There is little doubt under section 541 of the Bankruptcy Code, that the second part of *Segal's* test, whether the property interest is so entangled with the debtor's fresh start that it should be excluded from the estate, is no longer a relevant factor. Many courts, however, continue to apply the "sufficiently rooted" half of the test to the property of the estate analysis under section 541. It is stated in the legislative history to section 541 that the "result" of *Segal* is followed and the "right to a refund is property of the estate," without any reference to the "sufficiently rooted" test. House Report No. 95-595, 95th Cong., 1st Sess. 367-8 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 82-3 (1978). Since tax refunds were at issue in *Segal,* and the legislative history refers to *Segal's* "result" but not the "sufficiently rooted" test, whether that test survived enactment of the Bankruptcy Code is debatable. The Fifth Circuit Court of Appeals has concluded that although Congress specifically approved of *Segal's* result, the "sufficiently rooted" test did not survive the enactment of the new definition of property of the estate in section 541. *In re Burgess,* 438 F.3d 493, 498-99 (5th Cir. 2006) (under current law, a debtor's interest in property may

---

[1] The Fifth Circuit's description of its holding is instructive:

> "We hold that the right to claim loss-carryback refunds under the circumstances of this case is property as that term is used in [§70a(5) of the Bankruptcy Act], notwithstanding that the claim is subject to adjustment in the event the taxpayer has other losses or earnings during the balance of the year, and the claim may not be filed until the end of the taxable year. This right of action springs from and rests on the fact that the income taxes theretofore paid were paid subject to adjustment in the event of future losses, and are available for that purpose to the end of providing the refund. The right to adjustment is definite; the time for filing the claim is definite; only the amount of the refund is contingent and this meets the test of a possibility vested with an interest."

*Segal v. Rochelle,* 336 F.3d 298, 302 (5th Cir. 1964).

be contingent or enjoyment postponed until after bankruptcy, but the debtor must have had a prepetition

legal interest nonetheless).

Similarly, the Seventh Circuit has expressed skepticism about the usefulness of the "sufficiently

rooted" test even in the context of tax refunds in *In re Meyers,* 616 F.3d 626 (7th Cir. 2010), a case

concerning what portion of a debtor's right to federal and state income tax refunds were property of her

bankruptcy estate.  Referring to the two-part "sufficiently rooted" test of *Segal* and characterizing it as the

"background rule under the old Bankruptcy Act, to which courts still refer in the era of the Bankruptcy

Code," the court stated that "[t]hese general rules provide the background for resolving disputes over tax

refunds, but they are only a starting point. The fact that reasonable people can identify competing

methods for calculating the pre-petition share of the refunds betrays the incompleteness of a rule that

simply calls for identifying at what time an asset became 'rooted'." *Id.* at 628. The court went on to hold

that the bankruptcy court properly applied the "*pro rata* by days" method for allocating post-petition tax

refunds between the bankruptcy estate and the debtor.

Without mentioning the "sufficiently rooted" test or otherwise addressing *Segal,* the Seventh

Circuit has determined that a prepetition property interest becomes property of the estate only to the

extent that the debtor had the right to enforce the interest as of the petition date. See *In re Carlson,* 263

F.3d 748 (7th Cir. 2001) (debtor-attorney's right to, and thus the estate's interest in, a future contingent

fee, determined under Illinois law as the "fair value" of his services as of the petition date); *Matter of

Sanders,* 969 F.2d 591 (7th Cir. 1992) (debtor's interest in accumulated contributions in pension plan not

property of the estate where debtor had no present right to the funds on the petition date).

The continuing viability of the "sufficiently rooted" test must also be measured against the

Supreme Court's decision in *Butner v. U.S.,* 440 U.S. 48 (1979), a seminal decision concerning property

of the estate, where the Court resolved a circuit split as to whether state law or federal law should

determine whether a creditor's security interest in property extends to rents and profits from the property.

The majority of circuits applied state law whereas the minority had adopted a federal rule of equity that

gave the mortgagee a security interest in the rents for bankruptcy purposes, even if state law would not

recognize any such interest until after foreclosure. Adopting the majority view, the Supreme Court refused to create a uniform federal rule where Congress chose not to make such a rule part of the statute.

*Butner* neither cites *Segal* nor refers to its "sufficiently rooted" reasoning. Interpreting *Segal's* "sufficiently rooted" test as laying out a broad federal principle of bankruptcy jurisprudence, that preempts state law, to be applied to property of the estate issues under section 541 of the Bankruptcy Code, contradicts *Butner's* holding that state law should determine the nature and extent of a debtor's property interests for property of the estate purposes.[2]

Indeed, several courts have determined *Segal's* "sufficiently rooted" test not to be applicable where a prepetition property interest did not exist as a matter of state law. See *In re Burgess,* 438 F.3d 493 (5th Cir. 2006) (holding a debtor's interest in disaster relief payment from a prepetition crop loss, was not property of the estate where the legislation authorizing the payment was not enacted until after the bankruptcy filing, rejecting the trustee's reliance on *Segal* and determining that a prepetition legal interest is a necessity, the absence of which cannot be overcome by applying the sufficiently rooted analysis); *In re Glaser,* 2019 WL 1075613 (9th Cir. BAP 2019) (in the Ninth Circuit, to be "sufficiently rooted in the prebankruptcy past," a payment must arise from some prepetition right or entitlement); *In re Holstein,* 321 B.R. 229 (Bankr. N.D. Ill. 2005) (Goldgar, J.) (noting some courts hold a cause of action that accrues post-petition is nevertheless property of the estate as long as it is adequately linked to the prebankruptcy past, Judge Goldgar disagreed with that reasoning as misreading *Segal* in a way that is inconsistent with *Butner* and disregards "the clear temporal line" drawn by §541(a)(1)); *Hoseman v. Weinschneider,* 277 B.R. 894 (N.D. Ill. 2002), *aff'd on other grounds,* 322 F.3d 468 (7th Cir. 2003) (district court held bankruptcy court erred by applying *Segal's* "rooted in the pre-bankruptcy past" doctrine without considering whether there was a prepetition contract under state law).

This Court agrees with the view expressed by these courts that *Segal* should not be interpreted as setting forth a federal standard to be layered on to the property of the estate analysis under section 541,

---

[2] The use of the metaphor "sufficiently rooted," without providing a rationale for distinguishing between sufficient and insufficient roots, is ineffective as a judicial rule of decision.

where property interests arising under state law are at issue. The common law "sufficiently rooted test"
has been superceded by section 541(a)(1)'s requirement of a "legal or equitable interest … as of the
commencement of the case." If applicable state law provides that a potential property interest of a debtor
was merely an expectancy as of the petition date, the expectancy is properly excluded from the estate
without regard to whether the interest may be said to be "rooted" in the debtor's pre-bankruptcy past. The
fact that the parties have stipulated that 62.7% of the Debtor's 2018 STIP bonus is rooted in her
prebankruptcy past will play no role in the analysis of whether the Debtor had a prepetition property
interest in the STIP bonus, which will be decided as a matter of Illinois law.

### Illinois Law

 A review of Illinois caselaw indicates that a bonus revocable at the employer's discretion until
paid is a mere expectancy, not a property interest. In general usage, a "bonus" means a consideration or
premium paid in addition to what is strictly due; a gratuity to which the recipient has no right to make a
demand. *Schwarze v. Solo Cup Co.,* 112 Ill. App. 3d 632, 640 (2d Dist. 1983). In *Krause v. Royal Metal
Mfg. Co.,* 162 Ill. App. 458 (1st Dist. 1911), Krause sued his employer for breach of contract for failing to
pay him a promised bonus. In the absence of evidence that Krause agreed to continue his employment for
any particular length of time in exchange for the promise of a bonus, the court refused to enforce the
alleged contract as too indefinite and lacking in mutuality.

 In *Gustafson v. Lindquist,* 40 Ill. App. 3d 152 (1st Dist. 1976), an employer gave a promissory
note to his employee, a portion of which represented a promised bonus payment. The employer contended
the bonus was without consideration and unenforceable. The employee claimed it was payment of a bonus
promised to him in exchange for continuing to work the night shift, while the employer alleged it was
merely a gift for being a good employee. The court determined that although the amount of the bonus had
not been quantified at the time of the promise, the original indefiniteness had been cured when the
employer fixed the amount of the bonus by issuing a promissory note to the employee. *Id.* at 156-57. The
court also rejected the employer's argument that there was no consideration for the bonus, determining

that the trial court's finding that the bonus was paid in consideration of the employee's agreement to continue to work the night shift was not against the manifest weight of the evidence. *Id.* at 157.

In *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482 (1987), the Illinois Supreme Court, in the context of a wrongful discharge action, held that an employee handbook could create enforceable contractual rights if the traditional requirements for contract formation are present, significantly noting, however, that "the handbook contains no disclaimers to negate the promises made." *Id.* at 491.

In a case involving a discretionary bonus program similar to Caterpillar's program, the second district appellate court addressed a terminated employee's claim against his employer for failure to pay an annual bonus provided under a short-term incentive program (STIP). *Burke v. Zurich American Ins. Co.,* 2012 IL App (2d) 111320-U. The STIP documents provided for an annual bonus to eligible employees payable in March or April of each year; the bonus was intended to reward business division, service unit and individual performance; an employee's eligibility for the program was subject to a determination by the employer that the employee was in good standing at all times, including the time of payment, as determined by the employer in its sole discretion; the employee's manager or CEO had the discretion to disallow an incentive award for any employee at any time; the CEO or department head had the right to revise, modify or take away an incentive award to accommodate circumstances that may arise with respect to an individual participant, in his or her sole discretion; and the incentive program could be terminated, amended, or modified by the employer at any time with or without notice to participants in the employer's sole discretion.

At issue was Burke's claim brought under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et. seq.,* requiring that separated employees receive final compensation including "earned bonuses." The appellate court determined that the 2007 STIP bonus was not an "earned bonus" under the Wage Act since the bonus was discretionary and dependent upon several conditions which were not satisfied. These included that Burke was in violation of a company policy at the time the bonus was to be "actually paid," and that he was not in good standing at the time of payment as determined by Zurich in

its sole discretion. The court concluded that the STIP documents did not contain an "unequivocal promise" that Burke would be paid a bonus based solely on his performance in 2007 and the fact that Zurich had already approved Burke's bonus before he was fired did not transform the discretionary bonus into an unequivocal promise that the bonus would be paid. The discretionary nature of the STIP bonus was critical to the court's conclusion that the bonus, approved but not yet paid, was not "earned" at the time of Burke's termination and was not required to be paid under the Wage Act. *Id.* at ¶19 and ¶20. While decided under the Wage Act, *Burke* supports the principle that an employer's reservation of absolute discretion not to award potential bonuses will be enforced literally and prevents any right to the future payment from vesting in the employee. See, also, *Collins v. Associated Pathologists, Ltd.,* 676 F.Supp. 1388 (C.D. Ill. 1987) (Illinois law is clear that where award of bonus is discretionary, employee may not compel payment as a matter of right).

In *In re Marriage of Wendt,* 2013 IL App (1st) 123261, as a matter of first impression, the court considered whether a non-vested discretionary bonus to be paid to the husband after the entry of the judgment of dissolution constituted marital property. The trial court found that the bonus was not marital property because it was not a property interest at all but, instead, was a mere expectancy. Reviewing the evidence, the appellate court determined that the husband did not have an employment contract and so had no contractual right to receive a bonus. The employer's bonus program specifically provided that "bonuses and awards are discretionary," and the entitlement to and amount of any bonus or award "shall be determined and awarded, if at all, in the discretion of the Company." On this basis, the appellate court affirmed the trial court, holding that the bonus, if the husband received one, did not constitute marital property.

It follows from these authorities that where an employer reserves the absolute discretion not to award a future bonus, the bonus is treated under Illinois law as an expectancy, not a present property interest. Contract language, like that used by Caterpillar, that makes the bonus discretionary and disclaims any obligation to pay it, is enforced according to its terms. Moreover, the Court is aware of no support in

10

Illinois caselaw for the argument advanced by the Debtor that a historic pattern of bonus payments by an employer may override plan provisions that make the bonus discretionary.[3]

Because the Debtor, on the date of the petition, had only a bare expectancy interest, the Trustee takes no present property interest in any future STIP payment and no part of it can become property of the estate. To consider the bonus to be property of her estate simply because it related to her prepetition employment would be to give the bankruptcy estate more than the Debtor had on the petition date. The Court holds that the Debtor's expectancy interest in the 2018 STIP bonus is not a legal or equitable interest in property as of the commencement of the case under section 541(a)(1) and is not an asset of her estate subject to the Trustee's administration.

For the foregoing reasons, the Trustee's motion for turnover of 62.7% of the Debtor's 2018 STIP bonus will be denied. A separate order will be entered. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

---

[3] The Debtor advances no other theory or principle of Illinois law that would negate the enforceability of absolute discretion reserved in the STIP documents.